**WILMER CUTLER PICKERING**
   **HALE AND DORR LLP**
SONAL N. MEHTA (SBN 222086)
JESSICA LEWIS (SBN 302467)
Sonal.Mehta@wilmerhale.com
Jessica.Lewis@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

ARI HOLTZBLATT (SBN 354631)
ALLISON SCHULTZ (*pro hac vice*)
NATHANIEL W. REISINGER (*pro hac vice*)
Ari.Holtzblatt@wilmerhale.com
Allison.Schultz@wilmerhale.com
Nathaniel.Reisinger@wilmerhale.com
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6443

*Attorneys for Defendant*
*Meta Platforms, Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA,
## SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSHUA BOUCK, et al.,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>META PLATFORMS, INC.,<br><br>　　　　　　　Defendant. | Case No. 3:25-cv-05194-RS<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER FED. R. CIV. P. 12(b)(1), 12(h)(3)**<br><br>Judge: Hon. Richard Seeborg<br>Courtroom 12, 19th Floor<br>Date: June 11, 2026<br>Time: 1:30pm |

Plaintiffs' opposition confirms that their claims must be dismissed under SLUSA. Plaintiffs do not dispute that their claims satisfy four of SLUSA's five statutory requirements. They contest only whether the alleged misrepresentations were made "in connection with" their purchases of CLEU shares. On that requirement, Plaintiffs misstate the law and contradict the allegations and filings in this case as well as in parallel federal securities litigation. Because Plaintiffs' own theory is that Meta made misrepresentations "in connection with" Plaintiffs' purchase of covered securities, SLUSA bars their claims.

## I.    PLAINTIFFS' OPPOSITION CONFIRMS THAT SLUSA BARS THEIR CLAIMS

Plaintiffs do not contest, and therefore concede, four of SLUSA's five statutory requirements. *See Namisnak v. Uber Techs., Inc.*, 444 F. Supp. 3d 1136, 1146 (N.D. Cal. 2020) (where plaintiffs "fail[] to respond to" an argument, they "concede[] it through silence"). Specifically, Plaintiffs do not dispute that SLUSA's first, second, and fifth requirements (i.e., "covered class action," state law claims, and "covered security") are satisfied. Dkt. 74 at 2. Nor do they dispute the third requirement (misrepresentation). Consistent with this Court's prior motion to dismiss ruling, Plaintiffs maintain that Meta itself created the fraudulent ad content and thus concede that Meta's purported "'deceptive statements or conduct form the gravamen or essence of [Plaintiffs'] claim.'" *Id.* at 3 (quoting *Lim v. Charles Schwab & Co., Inc.*, 2015 WL 7996475, at *5 n.4 (N.D. Cal. Dec. 7, 2015)).

Plaintiffs thus contest only the fourth element ("in connection with"). That reduces their argument to the following: Although Meta purportedly created fraudulent ads that caused Plaintiffs to be injured by purchasing CLEU shares, those alleged misrepresentations somehow were not made "in connection with" the CLEU purchases. That contention is wrong on the law and cannot be squared with Plaintiffs' own allegations and prior filings. Plaintiffs' claims should be dismissed.

### A.    Plaintiffs Fail To Rebut That Alleged Misrepresentations In The Challenged Ads Were Made "In Connection With" Plaintiffs' Purchase Of Securities

The fourth SLUSA element is satisfied because the alleged misrepresentations were made "in connection with" the purchase of a covered security. Dkt. 74 at 3-5. Plaintiffs' argument to the contrary misconstrues the law and the alleged facts.

*First*, Plaintiffs argue the "in connection with" element is not satisfied because they "do not allege that Meta's fraudulent advertisements even mentioned CLEU securities, much less contained false or misleading information about CLEU specifically." Dkt. 76 at 6-7; *see also id.* at 7 (arguing SLUSA requires "defendants' misrepresentations … to caus[e] [plaintiffs] to purchase a[] particular security"). This misstates the law. There is no requirement that the misrepresentation itself mention the specific security. To the contrary, the Ninth Circuit rejected this premise in *Fleming v. Charles Schwab Corporation*, where the alleged misrepresentation— that the defendant "would deliver best execution of [Plaintiffs'] trades"—was untethered to the sale of any particular security. 878 F.3d 1146, 1154 (9th Cir. 2017). As the Ninth Circuit explained, it did not matter that "the promise of best execution d[id] not induce clients to trade a *particular* security." *Id.* at 1156. Instead, "SLUSA requires only that 'the misrepresentation makes a significant difference to someone's decision to purchase or to sell a covered security.'" *Id.* (quoting *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 387-388 (2014)). As explained in Meta's opening brief, that "significant difference" standard is satisfied here. Dkt. 74 at 4.[1]

This aligns with *Scala v. Citicorp Inc.*, 2011 WL 900297 (N.D. Cal. Mar. 15, 2011), and refutes Plaintiffs' claim that *Scala* is no longer good law. Dkt. 76 at 8-9. Plaintiffs wrongly suggest that *Scala* has been superseded because it reasoned that SLUSA should be construed "very broad[ly]," based on *Merrill Lynch, Pierce, Fenner & Smith v. Dabit*, 547 U.S. 71 (2006). *Id.* But *Troice*—the case on which Plaintiffs rely—expressly held that it was not modifying *Dabit* and reaffirmed that "the 'in connection with' requirement … *must be read broadly*." 571 U.S. at 387; *accord Banks v. N. Tr. Corp.*, 929 F.3d 1046, 1054 (9th Cir. 2019). Plaintiffs otherwise attempt to distinguish *Scala* based on superficial factual differences; they argue Meta is not a financial institution and did not approve monetary transfers or maintain brokerage accounts. Dkt. 76 at 9. But that focus on Meta's business, rather than the connection between its alleged conduct and Plaintiffs' purchase of covered securities, misses the point. What mattered in *Scala*—and what matters here—is the nexus between the defendant's alleged conduct and the securities transactions.

Plaintiffs' cases do not support a contrary conclusion. *See* Dkt. 76 at 7-8. In each case,

---

[1] All emphasis is added unless otherwise noted.

SLUSA did not apply because the alleged misconduct caused harm unrelated to any decision to purchase or sell a covered security. *In re Robinhood Outage Litig.*, for example, involved a "complaint … based entirely on the allegation that Robinhood promised users robust and best-in-class technology, and failed to deliver it" because of a "systems crash." 495 F. Supp. 3d 831, 834-835 (N.D. Cal. 2020). In *Anderson v. Edward D. Jones & Co., L.P.*, the plaintiff was allegedly duped into selecting a high-fee brokerage account but nowhere alleged he would have "purchased or sold different covered securities" had he kept a lower-fee account. 990 F.3d 692, 702-703, 705 (9th Cir. 2021). And in *Abada v. Charles Schwab & Co.*, the "defendant's conduct had nothing to do with the trading of any particular security," as the alleged loss resulted from Schwab's "technical inability" to process an order request. 127 F. Supp. 2d 1101, 1103 (S.D. Cal. 2000). In each of these cases, the claimed losses stemmed from something other than the plaintiffs' decision to purchase or sell a covered security.

*Second*, beyond misstating the law, Plaintiffs attempt to recast the alleged facts in a way that renders their case unrecognizable. Until now, Plaintiffs have repeatedly claimed they were injured solely because they purchased shares of CLEU whose value collapsed. And they have claimed Meta was responsible for that injury because Meta allegedly contributed to ads that caused Plaintiffs to make those purchases. Plaintiffs' new assertion that they do not allege Meta "induced any Plaintiff to purchase [CLEU] shares," Dkt. 76 at 10, contradicts the Second Amended Complaint ("SAC") and their previous filings.

Even construed "in the light most favorable to [Plaintiffs]," *see* Dkt. 76 at 4, the SAC's allegations satisfy the "in connection with" requirement. The SAC repeatedly describes the challenged ads, WhatsApp communications, and manipulation of the CLEU share price as part of a single "CLEU Scheme." SAC at 1 & ¶¶ 1, 17-24, 93, 96-97, 122, 145, 157, 162, 187, 205-206. It alleges that this "CLEU Scheme" "*used advertisements created by Meta* and distributed through the Company's Facebook and Instagram and social media platforms, and its WhatsApp messaging service, to extract millions of dollars from unsuspecting victims," *id.* ¶ 1, and was "designed to manipulate the price of CLEU shares," *id.* ¶ 157; *see also id.* ¶ 17 ("Meta's advertising tools were the *critical first step in the scheme*, which led to Plaintiffs and other victims interacting with and

being victimized by the scammers."). And it uses the *very* language of this SLUSA element—"in connection with"—to describe the challenged ads as part of this scheme to manipulate the price of a security. *Id.* ¶¶ 19, 205-206. Indeed, Plaintiffs call the challenged ads "an *essential* element used to lure Plaintiffs … into purchasing large amounts of CLEU shares." *Id.* ¶ 158.

Plaintiffs' Opposition to Meta's Rule 12(b)(6) motion likewise reiterated the connection between the challenged ads and their purchase of CLEU shares. That brief called the challenged ads the "CLEU ads." Dkt. 57 at 6, 15. It described Meta as playing a "fundamental role in executing the fraud" because it allegedly "developed hundreds of fraudulent advertisements for the CLEU scam." *Id.* at 15. And it claimed that "the scam *ads … resulted in [Plaintiffs'] financial losses*" from buying the inflated CLEU stock. *Id.* at 25. Having pleaded, and repeatedly reaffirmed, that Meta's conduct was part of a single, unified scheme that caused Plaintiffs to purchase CLEU shares and suffer trading losses, Plaintiffs cannot now try to draw a sharp line between those ads and their eventual purchase of the shares to avoid SLUSA.

*Third*, if Plaintiffs' allegations and representations in this case left any doubt, Plaintiffs' new position also contradicts the positions taken by these same Plaintiffs in a parallel securities fraud class action where they are represented by the same counsel. Compl., *Shah, et al. v. China Liberal Educ. Holdings Ltd., et al.*, No. 1:26-cv-823-GHW-HJR (S.D.N.Y. Jan. 30, 2026), Dkt. 1. In that complaint, Plaintiffs allege a "boiler room operation" in which the same CLEU scammers "recruited victims through advertisements on … Facebook and Instagram," who "were then added to groups on … WhatsApp," and Plaintiffs describe these actions as "*related because they all were committed in furtherance of the same … scheme involving CLEU securities*," including the "fraudulent promotional campaigns." *Id.* ¶¶ 8-9, 237. Indeed, in that case Plaintiffs characterize the challenged "ads on Facebook and Instagram" as "*vehicles for the Scammers to execute a stock manipulation scheme*." *Id.* ¶ 133. Plaintiffs cannot plausibly allege in another federal court that Meta's platforms were integral to the promotional campaign that manipulated CLEU's stock price and caused their trading losses, while simultaneously insisting to this Court that Meta's alleged misrepresentations were not made "in connection with" their purchases of CLEU shares.

Plaintiffs wrongly contend that *Troice* renders their parallel litigation irrelevant. Dkt. 76 at

5-6. Their description of that case as "sustain[ing]" state law claims despite parallel federal liability is unsupported by the case itself. *Id.* (citing *Troice*, 571 U.S. at 385, 391-392, 394). *Troice* involved a scheme in which victims were duped into buying certificates of deposit ("CDs") from a bank, expecting their money would be invested, but discovering it instead went towards a Ponzi scheme. 571 U.S. at 384. SLUSA did not apply because the plaintiffs' injuries came from their purchases of CDs—which are not "covered securities"—and related to covered securities only insofar as the value of the CDs was based on the *bank*'s purported ownership of covered securities. *Id.* at 384-385, 396. The plaintiffs did not allege they purchased or sold any covered securities based on the alleged misrepresentations. *Id.* There was "consequently … not the necessary 'connection' between the materiality of the misstatements and the statutorily required 'purchase or sale of a covered security.'" *Id.* at 396-397.

*Troice* thus "sustained" the underlying suits alleging state law claims, Dkt. 76 at 6, because SLUSA's statutory factors were not satisfied—not because they were alleged against defendants other than the scammer, *contra id.* at 5. And the parallel "liability under the federal securities laws" in *Troice* bears no similarity to Plaintiffs' duplicative securities class action, Dkt. 76 at 6; the parallel liability in *Troice* was federal *criminal* liability for the scammer, based on the sale of CDs *themselves* (because criminal liability under federal securities law extends to securities beyond "covered" ones, like CDs), *Troice*, 571 U.S. at 393. *Troice* "preserve[d] the ability for investors to obtain relief under state laws when the fraud bears so remote a connection to the national securities market that no person actually believed he was taking an ownership in that market." *Id.* at 394. It did not preserve the ability to file parallel, duplicative litigation alleging the same scheme and the same harm tied directly to the same purchase of covered securities. Indeed, SLUSA exists to prevent exactly that. *See infra* pp.6-7.

*Finally*, Plaintiffs "cannot have it both ways" when it comes to causation. *See Fleming*, 878 F.3d at 1156 (rejecting "claim that [defendant's] failure to [fulfill fraudulent promise] impacted [plaintiffs'] securities trades while simultaneously claiming that the breach of duty is not 'in connection with' those trades"). Either Meta's alleged conduct caused Plaintiffs to purchase CLEU shares and suffer trading losses—in which case SLUSA's "in connection with" requirement

is satisfied—or Meta's conduct was too attenuated from the purchases to support causation at all. Plaintiffs' attempt to recast Meta's role as merely facilitating an initial connection, with the actual "grooming" and inducement allegedly occurring later through independent criminal actors, would sever the causal chain on Plaintiffs' own theory and defeat their claims. *See* Dkt. 76 at 7.

Plaintiffs' own authority confirms this point. SLUSA's "in connection with" requirement turns on whether there is "some causal connection between the fraud and the securities transaction in question." *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1026 (9th Cir. 1999). Plaintiffs either allege that connection, which triggers SLUSA, or they do not, in which case they fail to plausibly allege that Meta's conduct caused their trading losses. Plaintiffs' retreat from their original causation theory cannot both evade SLUSA and preserve their claims. SLUSA forecloses the former, and basic principles of causation foreclose the latter.[2]

**B.    Barring Plaintiffs' State Law Claims Is Consistent With SLUSA's Purposes**

Perhaps recognizing the weakness of their position on SLUSA's statutory requirements, Plaintiffs lead their brief with freestanding policy arguments for not applying SLUSA. Dkt. 76 at 4-6. They point to the supposed merits of their case, the extent of the alleged harm, and other policy arguments as a reason not to apply SLUSA's statutorily required bar. *Id.* They do not—and cannot—cite any authority to support their suggestion that the Court could decline to apply SLUSA based on free-floating policy considerations disconnected from its statutory requirements. SLUSA's jurisdictional bar applies where those statutory requirements are satisfied, none of which considers the merits of the claims at issue or the extent of the alleged harm.

To the extent policy is relevant, however, Plaintiffs' own litigation strategy demonstrates why SLUSA exists. SLUSA was enacted to ensure Congress's preference for "national standards for securities class action lawsuits involving nationally traded securities." *Dabit*, 547 U.S. at 86-

---

[2] Plaintiffs claim that Meta's causation argument is procedurally improper, Dkt. 76 at 10, but that ignores the interplay of causation with their defense against SLUSA's bar, asserted here for the first time. In any event, rather than ignoring arguments that purportedly could have been raised in an earlier 12(b)(6) motion, the Court has discretion not to apply Rule 12(g)(2) because "relegating defendants to the three procedural avenues specified in Rule 12(h)(2)"—including a motion for judgment on the pleadings under Rule 12(c), which remains available to Meta here—"can produce unnecessary and costly delays." *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017). Meta respectfully submits that such delay is not warranted here.

87 (citing SLUSA § 2(5), 112 Stat. 3227). It sought to prevent "members of the plaintiffs' bar" from "bringing class actions under state law" "[r]ather than face the obstacles set in their path by" the Private Securities Litigation Reform Act ("PSLRA"). *Id.* at 82. Those obstacles include "requir[ing] plaintiffs to meet heightened pleadings standards," "permit[ting] defendants to obtain automatic stays of discovery," "limit[ing] recoverable damages and attorney's fees," and "creat[ing] a new 'safe harbor' for forward-looking statements." *Troice*, 571 U.S. at 382-383. SLUSA is intended to be construed broadly so that plaintiffs cannot "circumvent Congress's purpose 'through artful pleading that removes the covered words but leaves in the covered concepts.'" *Hampton v. Pac. Inv. Mgmt. Co. LLC*, 705 F. App'x 558, 559-560 (9th Cir. 2017). Of particular relevance in this case, SLUSA was aimed at preventing "parallel class actions … with different standards governing claims asserted on identical facts." *Dabit*, 547 U.S. at 86-87.

Here, Plaintiffs are actively pursuing a federal securities class action governed by the PSLRA to recover for the alleged CLEU trading losses, while recasting those same losses in this case as state-law claims free from the PSLRA's strictures. *Compare* SAC ¶ 1 ("This case arises from Meta's role in … a stock manipulation scheme that used advertisements … distributed through the Company's Facebook and Instagram social media platforms, and its WhatsApp messaging service[.]") *with Shah*, No. 1:26-cv-823-GHW-HJR, Dkt. 1 ¶¶ 8-9, 237 (alleging "promotional campaigns" including "advertisements on … Facebook and Instagram" and "groups on … WhatsApp" were "*all… in furtherance of the same … scheme involving CLEU securities*"). As a district court in this circuit observed in a similar case involving a parallel federal securities action, "allowing Plaintiffs to proceed with their California state court action would encourage duplicative litigation and, consequently, undermine 'the congressional preference for national standards for securities class action lawsuits involving nationally traded securities.'" *In re Edward Jones Holders Litig.*, 453 F. Supp. 2d 1210, 1216-1217 (C.D. Cal. 2006) (quoting *Dabit*, 547 U.S. at 87). And here, there are not only parallel civil class actions seeing recovery for the same trading losses. The government has also recovered $200 million through a forfeiture action, which is now available to victims of the CLEU scheme, as Plaintiffs allege they are. Dkt. 74 at 5. This case falls squarely within SLUSA's mandate.

**CONCLUSION**

For the foregoing reasons, the SAC should be dismissed for lack of jurisdiction.


Dated: May 21, 2026                          Respectfully submitted,

By:*/s/ Sonal N. Mehta*
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
JESSICA LEWIS (SBN 302467)
Jessica.Lewis@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

ARI HOLTZBLATT (SBN 354631)
Ari.Holtzblatt@wilmerhale.com
ALLISON SCHULTZ (*pro hac vice*)
Allison.Schultz@wilmerhale.com
NATHANIEL W. REISINGER (*pro hac vice*)
Nathaniel.Reisinger@wilmerhale.com
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6443

*Attorneys for Defendant Meta Platforms, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of May, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System.

/s/ *Sonal N. Mehta*

Sonal N. Mehta