UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSHUA BOUCK, et al.,

    Plaintiffs,

    v.

META PLATFORMS, INC.,

    Defendant.

Case No.  25-cv-05194-RS

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION**

In this putative class action, a group of individuals sued Meta for its role in a fraudulent investment scheme. Plaintiffs aver that advertisements on Meta's social media platforms tricked them into joining scam chat groups peddling a worthless Chinese penny stock, China Liberal Education Holdings (CLEU). Meta moved to dismiss, invoking the protection of Section 230 of the Communications Decency Act. Section 230 does not protect a provider of an interactive computer service, like Meta, that "contributes materially to the alleged illegality of the conduct." *Fair Housing Council of San Fernando Valley v. Rommates.Com, LLC*, 521 F.3d 1157, 1167 (9th Cir. 2008) (en banc). Meta's motion was denied because the complaint—read in the light most favorable to Plaintiffs—averred that Meta "literally *generat[ed]*, using artificial intelligence, the images and text in the advertisements," which sufficed to show material contribution to the alleged illegality of the ads and thus to defeat section 230 protection. Dkt. 61, at 6 (emphasis in original).

Meta moves to dismiss again, this time on jurisdictional grounds. It argues that Plaintiffs' claims are barred by the Securities Litigation Uniform Standards Act of 1998 (SLUSA), Pub. L. 105-353, 112 Stat. 3227, which "forbids the bringing of large securities class actions based upon

violations of state law," *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 380 (2014). This case, Meta contends, is effectively a securities class action brought under state law because the alleged misrepresentations—those contained within the fraudulent advertisements—were made "in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1).

Under Plaintiffs' theory of the case, that is right. Though the fraudulent statements did not mention CLEU, they were integral to Plaintiffs' decision to purchase the shares, and it is those purchases which form the basis of their injury. *See Troice*, 571 U.S. at 387 (requiring a fraudulent statement to be "material to a decision by one or more individuals (other than the fraudster) to buy or sell a 'covered security'" in order for that statement to have been made "in connection with" such a purchase or sale). Therefore, the motion to dismiss is granted. Because the dismissal is jurisdictional, it is without prejudice. *See Hampton v. Pacific Investment Management Company LLC*, 869 F.3d 844, 847 (9th Cir. 2017).

### I. BACKGROUND

The facts underlying this litigation were laid out thoroughly in the recent order denying Meta's first motion to dismiss, so only a brief background is provided. Meta is a technology company that, as relevant here, operates Facebook and Instagram, both of which are social media platforms, and WhatsApp, an encrypted communications platform. To make money, Meta sells ads.

Unfortunately, the advertisements on Meta's platforms are replete with scams. One common variant is the investment scam, wherein someone will post an ad in which a prominent businessperson or celebrity appears to be endorsing a particular investment strategy or program. To take just one example, the scammers here posted an ad from an account called "AI Investment" which showed Savita Subramanian, the head of U.S. equity and quantitative strategy at Bank of America Merrill Lynch, promoting a "community of dedicated investment professionals" that promised "a tailored stock strategy" with the potential to generate between returns of 30 to 40 percent *daily*. There is no indication Ms. Subramanian has any genuine affiliation with AI Investment or its sponsors.

United States District Court
Northern District of California

Users who engaged with this ad and others were funneled into private WhatsApp groups in which fraudsters posing as financial advisors would provide investment recommendations. The Plaintiffs here were pushed into groups in which the fake advisors suggested they buy shares in CLEU. The scammers predicted returns of up to 380% in 20 to 30 days. They also offered to reimburse investors for losses of up to 80% on their CLEU shares. Plaintiffs succumbed to the scheme, and the new demand for CLEU stock caused the share price to rise from $5.32 on January 21, 2025, to $7.90 on January 29, 2025.

Of course, it was all too good to be true. The scammers' co-conspirators had secretly acquired 240 million shares of CLEU, and they were using the transactions consummated in these scam WhatsApp chats to unload them. On January 30, 2025, the market learned of this massive supply overhang, and CLEU's share price cratered to 15 cents. Plaintiffs aver that they lost more than $300 million.

Plaintiffs sued Meta for its role in the creation of the fraudulent advertisements. Normally, internet companies such as Meta are immune from liability stemming from content posted on their platforms, and Meta invoked that immunity in its first motion to dismiss. *See* 47 U.S.C. § 230 ("Section 230"). However, if the company "contributes materially" to the illegality of the content, it loses the Section 230 liability shield. *See Rommates.Com, LLC*, 521 F.3d at 1167. Plaintiffs successfully averred that Meta did just that: Meta actively participated in the creation of the ads' content through its generative-AI tools, which—as the name suggests—*generated* the text and images in the ads. Accordingly, its first motion to dismiss was denied.

Meta now moves to dismiss again. It argues that the theory which helped Plaintiffs defeat the first motion to dismiss compels granting the second. If it is true that Meta contributed to the creation of the fraudulent ads, then this suit is necessarily based on the falsity of Meta's statements. A suit in which a plaintiff claims the defendant made false statements which led the plaintiff to purchase securities when he otherwise would not have is quintessentially one sounding in the securities laws, even if the right of action comes from state law. SLUSA prevents precisely that type of suit from being maintained in any court, state or federal. *See* 15 U.S.C. § 78bb(f)(1).

United States District Court
Northern District of California

Therefore, Meta contends the complaint must be dismissed for want of jurisdiction.

## II. LEGAL STANDARD

Rule 12(b)(1) authorizes dismissal for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack like this, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.*

## III. DISCUSSION

Meta's facial challenge to jurisdiction is based on SLUSA. Three years before Congress passed SLUSA, it enacted the Private Securities Litigation Reform Act of 1995 (PSLRA), Pub. L. 104-67, 109 Stat. 737. PSLRA attempted to stem abusive securities class actions by imposing heightened pleading requirements for claims brought under section 10(b) of the Security Exchange Act of 1934 and Rule 10b-5. *See Fleming v. Charles Shwab Corporation*, 878 F.3d 1146, 1152 (9th Cir. 2017). However, "PSLRA had the unintended effect of encouraging claims under state securities laws, which were not subject to the new pleading rules." *Id.*

SLUSA was enacted to "prevent state class actions alleging fraud 'from being used to frustrate the objectives' of the PSLRA." *Freeman Investments, L.P. v. Pacific Life Ins. Co.*, 704 F.3d 1110, 1114 (9th Cir. 2013) (quoting H.R. Conf. Rep. 105-803 (1998)). To that end, "SLUSA bars a plaintiff class from bringing (1) a covered class action (2) based on state law claims (3) alleging that the defendants made a misrepresentation or omission or employed any manipulative or deceptive device (4) in connection with the purchase or sale of (5) a covered security." *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 904 F.3d 821, 828 (9th Cir. 2018); 15 U.S.C. § 78bb(f)(1). The parties seem to agree that the first, second, third, and fifth elements are satisfied. The dispute is about whether Meta made the challenged statements "in connection with the purchase or sale" of CLEU shares. *Id.*

Controlling law interpreting this disputed requirement has evolved since SLUSA's passage. In *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, the Supreme Court gave the

ORDER GRANTING MOTION TO DISMISS WITHOUT PREJUDICE
CASE NO. 25-cv-05194-RS

United States District Court
Northern District of California

phrase "in connection with" a very broad meaning, explaining that "it is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else." 547 U.S. 71, 85 (2006) (quoting *United States v. O'Hagan*, 521 U.S. 642, 651 (1997)). However, the Court narrowed its interpretation eight years later in *Troice*. 571 U.S. at 387–92. Though the Court said that it was not modifying *Dabit*, it announced for the first time that SLUSA's "in connection with" language contains a materiality requirement. *See id.* The key phrase, the Court explained, "suggests a connection that matters," and "a connection matters where the misrepresentation makes a significant difference to someone's decision to purchase or sell a covered security . . ." *Id.* at 387–88.

The question, therefore, is whether the fraudulent statements that Plaintiffs complain of "ma[de] a significant difference to" their decision to purchase CLEU shares. Under Plaintiffs' theory of the case, the answer must be yes. Plaintiffs aver that the fraudulent advertisements lured them into WhatsApp groups by imbuing those groups with the veneer of legitimacy. If Savita Subramanian—or Kevin O'Leary, or some other finance celebrity—did not appear to be sponsoring the trading groups, they would not have joined those groups and ultimately purchased CLEU stock. That makes the false statement—the statement that these individuals were endorsing the trading groups—material to Plaintiffs' decision to purchase CLEU stock.

The averments in the complaint here bear many similarities to those in *Scala v. Citicorp Inc.*, No. C 10-03859 CRB, 2011 WL 900297 (N.D. Cal. Mar. 15, 2011). There, a putative class of investors sued Citigroup, an investment bank, for aiding and abetting a Ponzi scheme perpetrated by one of its clients, Joseph Viola. *See id.*, at *1. The plaintiffs averred that Citigroup falsely represented Viola's credentials as an investment-advisor and lied to investors about what would happen to their money if Viola were to become incapacitated. *See id.*, at *6. In that way, Citigroup "misled investors by lending Viola an air of legitimacy . . . causing them to turn over funds to Viola . . ." *Id.* The district court concluded these misrepresentations were made "in connection with" the purchase or sale of securities "because Plaintiffs' losses resulted directly from what they believed to be legitimate transactions involving covered securities." *Id.*, at *7. Therefore, the court

ORDER GRANTING MOTION TO DISMISS WITHOUT PREJUDICE
CASE NO. 25-cv-05194-RS

5

United States District Court
Northern District of California

found the claims preempted by SLUSA. *See id.*

Likewise, here, Plaintiffs aver that Meta fooled them into thinking the WhatsApp groups were being sponsored by reputable financial experts. Meta thus "misled investors by lending [the proprietors of those groups] an air of legitimacy." *Scala*, 2011 WL 900297, at *6. Their losses flow directly from that conduct: Absent the misrepresentations, Plaintiffs would not have joined the WhatsApp groups and would not have purchased CLEU stock. Thus, as in *Scala*, the misrepresentations were thus made "in connection with" the purchase or sale of securities.

Plaintiffs fight the application of *Scala* in two ways. First, they claim that it is no longer good law after *Troice*. It is true that *Scala* appears to have embraced a fairly expansive theory of SLUSA preclusion in determining that the "in connection with" prong could be satisfied "regardless of whether any securities transaction ever actually occurred, so long as the complaint alleged misrepresentations pertaining to such a transaction." 2011 WL 900297, at *6. That conclusion is in some tension with *Troice*. After all, it is difficult for a misstatement to be "material to a decision . . . to buy or sell a 'covered security,'" *Troice*, 571 U.S. at 387, if there was, in fact, no decision to buy or sell a covered security. On the other hand, *Troice* expressly stated it was "not modify[ing] *Dabit*," *id.,* so if *Scala* was a reasonable interpretation of *Dabit* (a proposition Plaintiffs do not challenge), it follows that it was also a reasonable interpretation of *Troice*. To the extent *Troice* did add some new gloss onto *Dabit*, it did so only by strengthening the nexus requirement between the misstatement and the securities transaction—not by altering the type of securities transaction to which SLUSA applies. Therefore, if it was sufficient under *Dabit*, as *Scala* held, for a transaction to qualify even if it was hypothetical, it may also be so under *Troice*.

Regardless, Plaintiffs' attempts to dig *Scala*'s grave miss its persuasive value. For present purposes, the teaching of *Scala* is that a third-party's misrepresentations which imbue a fraudster with credibility is "in connection with" a covered securities transaction if, as a result of the misstatement, the plaintiff enters into a relationship with that fraudster to trade covered securities. That, here, Plaintiffs indisputably transacted in covered securities simply makes this an easy case.

United States District Court
Northern District of California

Even if *Scala* would not survive *Troice* on its precise facts, a case that looks like *Scala,* but which involves real trading, would. This is such a case.

Second, Plaintiffs argue that the claims in *Scala* are different than those here because there, Citigroup was engaged in conduct directly related to securities transactions, such as setting up accounts for Viola to hold client funds. That distinction is superficial. In both cases, the defendant made misrepresentations that abetted the core fraud by facilitating the relationship between the plaintiffs and the ultimate fraudsters (there, Viola; here, the WhatsApp scammers). That Citigroup did so by acting as an investment bank while Meta did so while acting as an advertiser is inconsequential. Both used their positions to make misrepresentations, and in both cases, those misrepresentations were material to the plaintiffs' decision to buy or sell securities.

Notwithstanding *Scala*, Plaintiffs contend that SLUSA does not apply because the alleged misstatements do not mention CLEU stock by name, much less opine on its value. The Ninth Circuit, however, eschewed such a requirement in *Fleming v. Charles Schwab Corporation*, which construed the "in connection with" prong after *Troice*. *See* 878 F.3d 1146, 1155–56 (9th Cir. 2017). The plaintiffs there were a putative class of investors suing Charles Schwab, a financial services firm, for allegedly routing trades to preferred counterparties despite its promise to execute trades at the lowest cost to its clients. *See id.* at 1150. Attempting to avoid the SLUSA bar, the plaintiffs contended that the misstatements could not have been made "in connection with" the purchase or sale of any security because they did not "relate to the nature of the securities." *Id.* at 1156 (internal quotation marks omitted). The panel rejected that rule, explaining that while "misrepresentations about the nature of a security are surely in connection with that security, the in-connection prong can be satisfied otherwise." *Id.* (internal quotation marks and citation omitted). The question is whether the alleged misstatements were material to the plaintiff's decision to purchase or sell a security, and a misstatement can be material even if it does not mention the security by name. *See id.* at 1155 (finding misstatements about execution practices material because "[t]he net price obtained when purchasing or selling a security is plainly material to a buyer or seller").

The cases cited by Plaintiffs do not compel a different result. Consider first *Anderson v. Edward D. Jones & Co., L.P.* 990 F.3d 692 (9th Cir. 2021). Plaintiffs in that case were investors with Edward Jones, a financial services firm. *See id.* at 696. They averred that Edward Jones moved their assets from commission-based accounts to fee-based accounts in contravention of its fiduciary duties, which cost the plaintiffs money because they were passive investors that paid very little in commissions under the old model. *See id.* at 697. The district court dismissed the case under SLUSA because it conceived of the fiduciary duty claims "as alleging misrepresentation or omission based on Edward Jones not conducting [an analysis to determine the plaintiffs' suitability for a fee-based account]." *Id.* at 698.

The Ninth Circuit reversed. *See Anderson*, 990 F.3d at 704. SLUSA did not apply, the panel explained, because the complaint alleged "that Plaintiffs did not buy or sell any covered security because Edward Jones switched them to a fee-based account." *Id.* at 705. Said otherwise, there was no covered security transaction to which the misstatements were connected. Edward Jones's alternative theory was that SLUSA barred the claim because the plaintiffs "changed their investment behavior in [another] sense after switching to fee-based accounts: they closed their accounts." *Id.* at 706. That theory failed, too, the panel held because "[c]hoosing a broker or specific type of account is fundamentally different than choosing to buy or sell a covered security." *Id.*

Seizing on that language, Plaintiffs here contend that Meta's fraudulent statements merely induced them to establish a relationship with the scammers in the WhatsApp group, not to buy or sell any particular security. However, that contention obscures the fundamental difference between the two cases. In *Anderson*, the fraudulent statements were not made "in connection with" the purchase or sale of a security because, in fact, there was no purchase or sale—even a hypothetical one, as in *Scala*—that cost the plaintiffs money. The injury they identified was overpaying fees. Here, by contrast, Plaintiffs are only injured because they purchased CLEU stock. It may be that the *initial* effect of Meta's fraudulent statements was to cause Plaintiffs to form a trading relationship with the WhatsApp-based scammers, but the ultimate—and legally relevant—effect

was to get them to buy near-worthless securities. That makes the fraudulent statements material to their trading decision.

Plaintiffs next rely on *Abada v. Charles Schwab & Co., Inc.*, 127 F.Supp.2d 1101 (S.D. Cal. 2000). Like *Fleming*, *Abada* is about Charles Schwab's representations around trade execution. *See id.* at 1103. The plaintiff alleged that he lost money trading a "hot internet company . . . because Schwab was technically unable to place his order in a timely manner even though Schwab had advertised that online trades were subject to immediate execution." *Id.* The district court declined to dismiss the case under SLUSA, concluding that these "are not the type of allegations associated with securities fraud." *Id.* Indeed, the court there observed that the "defendant's conduct had nothing to do with the trading of any particular security and any misrepresentation made by Schwab did not affect the value of the security but merely involved the relationship between Schwab and its customers." *Id.*

The reasoning in *Abada* has plainly been abrogated by the Ninth Circuit's decision in *Fleming*. Those cases involved the nearly identical allegations (misstatements about the trade execution) against the same defendant. In neither case did the alleged misstatements touch on the value of any security or, indeed, mention any security by name. *Abada* found that to be reason SLUSA did not apply; *Fleming* found it to be irrelevant. The former is no longer good law.

Finally, Plaintiffs turn to *In re Robinhood Outage Litigation*, 495 F.Supp.3d 831 (N.D. Cal 2020). In that case, the plaintiff sued Robinhood, an online brokerage platform, under a variety of legal theories including fraud. *See id.* at 834. The complaint averred that Robinhood "touted its 'exceptionally engineered' and 'low-latency' technology as 'the best possible trade execution system' in the industry," when in fact it was prone to failure. *Id.* at 833. Robinhood moved to dismiss under SLUSA, but the district court denied the motion. The allegations, it explained, were "based entirely on the allegation that Robinhood promised users robust and best-in-class technology, and failed to deliver." *Id.* at 835. In its view, that "conduct is well outside the boundaries of the claims that Congress intended to preclude under SLUSA." *Id.*

*Robinhood* appears to have misunderstood the doctrinal framework governing SLUSA

United States District Court
Northern District of California

ORDER GRANTING MOTION TO DISMISS WITHOUT PREJUDICE
CASE NO. 25-cv-05194-RS

preclusion. It began its discussion by remarking that the plaintiff did not bring any claims "in connection with the securities laws as that concept has traditionally been construed," 495 F.Supp.3d at 834, but that conflates two distinct prongs of the test. The third prong asks whether the defendant made a misrepresentation or omission or used a manipulative or deceptive device— that is, it asks whether the defendant engaged in the type of conduct proscribed by the securities laws. *See Fleming*, 878 F.3d at 1154 (analyzing, at this step, whether the alleged breach "violates § 10(b) and Rule 10b-5 and is thus subject to the SLUSA bar"). The fourth prong—the "in connection with" prong—asks a completely different question. At that step, what matters is merely whether the fraud was sufficiently connected to the plaintiff's decision to buy or sell a security. If, for example, a fraudster lied about a company's revenues, she would be doing something patently proscribed by the securities laws, satisfying the third prong. Whether that set of facts would also satisfy the fourth prong would depend on to whom the statement was made: If it was made to an investor who bought stock based on that information, it would; If it was made to a politician who used that information to draft a new law, it would not.

*Robinhood*'s substantive analysis indicates that it was focused on the third prong only, despite its facial invocation of the fourth prong. It explained that "not every breach of contract or misleading statement by a broker adds up to a violation of the securities laws," suggesting that it was concerned Robinhood did not actually make a misstatement or employ a fraudulent device within the meaning of the Securities Acts. 495 Supp.3d at 834. At no point did *Robinhood* even mention whether the plaintiff succeeded in buying or selling securities, which is the cornerstone of the analysis under the "in connection with" prong.

The court's citations to Ninth Circuit authority confirm it was concerned with the third prong, not the fourth prong. For example, it cites to *Desai v. Deutsche Bank Securities Ltd.* for the proposition that a qualifying violation must "stem from the failure to disclose accurate information relating to the value of a security where one has a duty to disclose it." 573 F.3d 931, 940 (9th Cir. 2009). The Ninth Circuit made that statement in the context of articulating the difference between manipulative conduct and actionable omissions under the Securities laws. *See id.* That is, it was

ORDER GRANTING MOTION TO DISMISS WITHOUT PREJUDICE
CASE NO. 25-cv-05194-RS

10

articulating what kind of conduct satisfied the third prong; it had nothing to do with whether that conduct was "in connection with" the purchase or sale of a security. *Robinhood* also cites *Fleming* for its suggestion that a trading system crash should not be covered by SLUSA. *See* 878 F.3d at 1154. That observation was expressly made in the context of evaluating whether the plaintiffs had adequately averred a misrepresentation or omission actionable under the securities laws. *See id.* More specifically, the panel offered that example to substantiate the proposition that "not every breach of the best execution duty violates § 10(b) and Rule 10b-5 and is thus subject to the SLUSA bar." *Id. Fleming*'s discussion of the "in connection with" prong came in an entirely different section of the opinion.

The upshot is that *Robinhood*, despite language suggesting otherwise, was all about what kind of conduct satisfied the third prong of the SLUSA preemption test. It has no application where the only contested element is the "in connection with" prong and thus cannot disturb the conclusion that SLUSA applies here.

At bottom, Plaintiffs are trying to have it both ways. They assert Meta's misrepresentations aided and abetted the core fraud by pushing them into scam investment groups while simultaneously maintaining that those misrepresentations were not material to their decision to purchase CLEU stock. Both cannot be true—either the misrepresentations mattered (in which case SLUSA applies) or they did not (in which case their claims fail on the merits). They insist that the "in connection with" prong of the SLUSA test and the proximate causation analysis under tort law are independent concepts that need not rise and fall together, but the Ninth Circuit has not drawn the line that finely. *See Fleming*, 878 F.3d at 1156 (noting that by contending that "failure to provide best execution impacted their securities trades while simultaneously claiming that the breach of duty is not 'in connection' with those trades," the plaintiffs were trying to "have it both ways"). As in *Fleming*, this case cannot proceed in its current form.

### IV. CONCLUSION

For the foregoing reasons, Meta's motion to dismiss is granted. Dismissal is granted without prejudice to refiling the case under federal securities laws or in some other form that is not

ORDER GRANTING MOTION TO DISMISS WITHOUT PREJUDICE
CASE NO. 25-cv-05194-RS

United States District Court
Northern District of California

precluded by SLUSA.

**IT IS SO ORDERED**.

Dated: June 11, 2026

_____
RICHARD SEEBORG
Chief United States District Judge

United States District Court
Northern District of California

ORDER GRANTING MOTION TO DISMISS WITHOUT PREJUDICE
CASE NO. 25-cv-05194-RS